UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                :

GREGORY PERKINS,                    :

                                :

                     Plaintiff,     :         14cv3779

                                :

           -against-             :         OPINION & ORDER

                                :

CITY OF NEW YORK, *et al.*,        :

                                :

                 Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

         Plaintiff pro se Gregory Perkins brings this federal civil rights action against Defendants the City of New York, New York City Department of Corrections Commissioner Joseph Ponte, Assistant Chief James Perrino, Warden Monica Windley, Captain Boyd, Captain Sledge, Captain Collazo, Correctional Officer Crichlow, and Grievance Coordinator Rosamund Padmore ("Defendants").[1]  Defendants move to dismiss the Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, Defendants' motion is granted.

### BACKGROUND

         The allegations in the Complaint are presumed to be true for purposes of this motion.  Following a pre-motion conference, this Court granted Perkins extensions of time to amend his complaint.  But Perkins did nothing.

         On May 11, 2016, this Court provided one final opportunity to amend and warned Perkins that if he failed to do so, his first amended complaint would be treated as the operative complaint.  Once again, Perkins did nothing.

---

[1] The Complaint also names "Monica Windley Warden" and "C.O. Pullucci" as defendants, but neither were served.  In any event, because the claims against these parties fail for at least the same reasons articulated herein, they too are dismissed.

In June 2016, Defendants moved to dismiss the operative complaint.  Perkins never opposed the Defendants' motion and has not communicated with this Court or the Defendants.  By letter dated August 24, 2016, Defendants asked this Court to treat their motion as fully briefed.  (ECF No. 80.)  At that time, Defendants also pointed out the obvious—namely, that Perkins has been unresponsive and ignored direct Orders of this Court.

The Complaint is a laundry list of Perkins's grievances, all of which are aggregated into a single claim.  First, Perkins alleges that he was subject to strip searches and body scans while incarcerated at the Otis Bantum Correction Center ("OBCC") and the Brooklyn Detention Center ("BDC").  (Compl. at 1.)  As a result, Perkins claims he was "extremely humiliat[ed]" and "felt very uneasy."  (Compl. at 1–2.)  He also claims he was "forced to go through" a RadPro SecurPass scanner without protective wear, subjecting him to "high levels of radiation."  (Compl. at 1–2.)

In another vein, Perkins claims that Correctional Officer Pullucci searched Perkins's living area and destroyed some of his legal documents "with malice and intent." (Compl. at 5.)  He claims that Captain Cooper supervised Pullucci and that later Captain Sledge failed to provide him with Pullucci's badge number.  (Compl. at 5.)  He also claims that Pullucci may have been in "cahoots" with Captain Boyd—whom he named in another complaint in the Eastern District of New York.  (Compl. Ex. 1, at 37.)

In a separate incident, Perkins claims that he was singled out by Correctional Officer Crichlow for a strip search while on his way to the law library.  (Compl. at 7.)  Perkins maintains that Correctional Officers retaliated against him for filing lawsuits.

Finally, Perkins claims that Captain Collazo conspired to have him assaulted by an inmate.  (Compl. at 9.)  Perkins alleges that Collazo escorted the inmate to Perkins's dorm

where the inmate attacked him in the presence of Correctional Officer Youngblood, who failed

to record the incident.  (Compl. at 9.)

## LEGAL STANDARD

"[T]he sufficiency of a complaint is a matter of law that the court is capable of

determining based on its own reading of the pleading and knowledge of the law." Goldberg v.

Danaher, 599 F.3d 181, 184 (2d Cir. 2010) (quoting McCall v. Pataki, 232 F.3d 321, 322–23 (2d

Cir. 2000).

To withstand dismissal, a pleading "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Courts must accept a plaintiff's allegations as true and draw all reasonable inferences in his

favor.  Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).  Where a plaintiff is proceeding pro

se, courts construe "the complaint to raise the strongest claims that it suggests." Williams v.

Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (citation omitted).  But

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

The Complaint is a bundle of largely conclusory allegations about a number of

unrelated incidents.  Nevertheless, construed liberally, his Complaint can be read as asserting

claims for unconstitutional strip searches and body scans in violation of the First, Fourth, and

Eighth Amendments, denial of access to the court system and retaliation in violation of the First

Amendment, and municipal liability.

I.        Personal Involvement of Individual Defendants

"It is well settled in this Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted).

"[W]here the complaint names a defendant in the caption but contains no allegations indicating

how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in

regard to that defendant should be granted."  Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335

(S.D.N.Y. 1999); Roberts v. City of New York, No. 14-CV-5198 (GHW), 2016 WL 4146135, at

*7 (S.D.N.Y. Aug. 2, 2016) ("A complaint that fails to allege how a specific defendant violated

the law or injured the plaintiff should be dismissed as to that defendant.").

Because the Complaint makes no specific allegations against Commissioner

Ponte, Assistant Chief Perrino, Warden Windley, Captain Cooper, and Rosamund Padmore, the

claims against those Defendants are dismissed.

II.        Strip Searches

Strip searches are "permissible provided that the search is tied to 'legitimate

security interests,' a determination that is 'peculiarly within the province and professional

expertise of correctional officers.'"  Walker v. Ponte, No. 14-CV-8507 (ER), 2016 WL 4411415,

at *4 (S.D.N.Y. Aug. 18, 2016) (quoting Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510,

1517 (2012)).  The Supreme Court has held that strip searches of all detainees at intake or after

contact visits, with or without reasonable suspicion, are reasonably related to legitimate security

concerns.  Florence, 132 S. Ct. at 1517; Bell v. Wolfish, 441 U.S. 520, 558–60 (1979).  And

"random strip searches may be conducted even in detainees' housing units."  Walker, 2016 WL

4411415, at *4.  Thus, "in the absence of substantial evidence in the record to indicate that the

officials have exaggerated their response to these considerations courts should ordinarily defer to

their expert judgment in such matters." Florence, 132 S. Ct. at 1517.

   Perkins alleges that the strip searches were unconstitutional because they (1)

occurred in front of cameras, (2) in front of other inmates, (3) conflicted with his religious

beliefs, and (4) were embarrassing.  But these allegations are insufficient to state a claim.  "Not

every embarrassment, humiliation, or psychological discomfort amounts to a constitutional

violation."  Arnold v. Westchester Cty., No. 09-CV-3727 (JSR) (GWG), 2012 WL 336129, at

*11 (S.D.N.Y. Feb. 3, 2012), report and recommendation adopted, No. 09-CV-3727 (JSR), 2012

WL 841484 (S.D.N.Y. Mar. 13, 2012); Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003)

("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to

prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional

violation.").  "Without more . . . the presence of a camera at a strip search does not amount to a

constitutional violation."  Peek v. City of New York, No. 13-CV-4488 (AJN), 2014 WL

4160229, at *2 (S.D.N.Y. Aug. 18, 2014).  Nor is the presence of other inmates during the strip

searches per se unconstitutional.  Vaughn v. Strickland, No. 12-CV-2696 (JPO), 2013 WL

3481413, at *5 (S.D.N.Y. July 11, 2013).  "[I]mpingements on a prisoner's . . . religious rights[]

that are rationally related to a legitimate penological interest are permissible."  Jean-Laurent v.

Lawrence, No. 12-CV-1502 (JPO), 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013).  And

while humiliation caused by strip searches may be sufficient to make a claim, the search must be

"conducted intentionally to harass or embarrass the plaintiff."  Walker, 2016 WL 4411415, at *5.

   The Complaint contains no allegations to allow an inference that the strip searches

were constitutionally defective.  Other than expressing his discomfort with the cameras, Perkins

asserts no facts calling into question their constitutionality.[2]  Although the Complaint alleges that

the strip searches were conducted where other inmates could observe, there is nothing to suggest

this was more than mere happenstance.  Similarly, while strip searches may violate his religious

beliefs, the Complaint fails to allege facts suggesting the searches were not rationally related to a

penological interest.  And the Complaint does not contain any allegation that the strip searches

were conducted for the purpose of harassment or embarrassment.  Accordingly, the claims

relating to the strip searches are dismissed.

    III.        Radiation Exposure

        "To establish an Eighth Amendment violation based on a claim that a prison

official placed an inmate's health in danger . . . the inmate must show that the prison official

acted with 'deliberate indifference' to 'a condition of confinement that is sure or very likely to

cause serious illness and needless suffering the next week or month or year.'"  Florio v. Canty,

954 F. Supp. 2d 227, 233 (S.D.N.Y. 2013) (quoting Helling v. McKinney, 509 U.S. 25, 33

(1993)).  "[T]he frequency of screenings is material to a claim of future injury as a result of

radiation exposure from RadPro screenings."  Walker, 2016 WL 4411415, at *6.  "[W]hile

exposure to any amount of radiation poses some risk of harm—society chooses to, and indeed

must, tolerate some level of radiation exposure."  Middleton v. City of New York (In re RadPro

SecurPass Scanner Cases), No. 13-CV-6095 (CS), 2014 WL 4054310, at *6 (S.D.N.Y. Aug. 13,

2014) (holding that five to ten RadPro SecurPass screenings did not put plaintiff at risk).

        Here, Perkins does not allege the number of screenings he endured.  Without such

allegations, this Court cannot plausibly infer that he was subjected to a sufficiently high number

---

[2]      In fact, the Complaint expresses an understanding of their reasonableness: he admits the cameras were installed for the protection of the inmates.  (See Compl. at 9 ("[T]he D.O.C. has installed these cameras on the authority of the chief administrative judge for [N]ew [Y]ork, under the pretences that the cameras are in place for our (detainees/inmates) protection.").

of screenings which could lead to future injury.  Accordingly, the claims relating to the radiation exposure are dismissed.

IV.        Retaliation

"To survive dismissal, a plaintiff asserting a First Amendment retaliation claim must advance non-conclusory allegations (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Young v. Strack, No. 05-CV-9764 (WHP), 2007 WL 1575256, at *6 (S.D.N.Y. May 29, 2007) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).

The "adverse action" must be "likely to chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment." Young, 2007 WL 1575256, at *6 (internal quotation marks omitted).  "Hostile statements of prison guards . . . do not presumptively violate the First Amendment." Tirado v. Shutt, No. 13-CV-2848 (LTS) (AJP), 2015 WL 4476027, at *5 (S.D.N.Y. July 22, 2015).  For "verbal threats [to] qualify as adverse action, they must be sufficiently specific and direct to be actionable." Albritton v. Morris, No. 13-CV-3708 (KMK), 2016 WL 1267799, at *17 (S.D.N.Y. Mar. 30, 2016) (internal quotation marks omitted).  Opaque threats "soften[] the deterrent effect considerably." Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010).

Here, the Complaint fails to allege an adverse action or causal connection. Crichlow's statements and minor physical contact do not qualify as adverse actions.  In fact, Perkins does not allege that Crichlow threatened him at all.  "[P]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Young, 2007 WL 1575256, at *7 (alteration in original).  Perkins does not

even know who Crichlow is.  (Compl. at 7 ("I have never set eyes on [Crichlow] before in my

life.").)  Accordingly, the claims against Crichlow are dismissed.

V.        Denial of Access to Courts

"[A] prisoner must show an actual injury in order to sustain a claim for denial of

access to the courts."  Smith, 2005 WL 1026551, at *6 (citing Lewis, 518 U.S. at 349–50).  In

the context of destroyed documents, an "[a]ctual injury occurs only when 'the loss of [plaintiff's]

materials prejudiced his ability to pursue a legal claim.'"  Smith, 2005 WL 1026551, at *6

(quoting Santiago v. N.Y.C. Dep't of Corr., No. 97-CV-9190, 2003 WL 1563773, at *5

(S.D.N.Y. Mar. 6, 2003)).   Perkins alleges no prejudice and obtained replacement copies of his

documents from the courts.  (Compl. Ex. 1, at 36–37.)  Accordingly, this claim, too, is

dismissed.[3]

VI.       Municipal Liability

"[T]o hold a city liable . . . for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Wray v. City of

N.Y., 490 F.3d 189, 195 (2d Cir. 2007).  Because Perkins fails to allege a violation of any

constitutional right, no Monell liability is pled against the City of New York.  See City of Los

Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at

the hands of the individual police officer, the fact that the departmental regulations might have

authorized the use of constitutionally excessive force is quite beside the point.").

---

[3]      The allegation that Captain Boyd's sister identified herself to Perkins over a month before Pulluci's search
fails to raise a claim for retaliation as Perkins did not suffer any adverse action.  Indeed, Perkins did not feel
threatened by the encounter with Captain Boyd's sister; it only left him "ponder[ing] on what the purpose was."
(Compl. at 6.)

VII.     State Law Claims

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims."

Hardy v. N.Y.C. Health & Hospitals Corp., 164 F.3d 789, 793 (2d Cir. 1999) (citing Felder v.

Casey, 487 U.S. 131, 151 (1988)).  "New York's notice-of-claim requirement is a 'condition

precedent' to suing for damages in a personal injury action against a municipality."  Murchison-

Allman v. City of New York, No. 1:14-CV-2160 (ALC), 2016 WL 1322445, at *6 (S.D.N.Y.

Mar. 31, 2016) (quoting Hardy, 164 F.3d at 794).  New York law requires a plaintiff to

affirmatively plead that he has complied with the notice of claim requirement.  See Davidson v.

Bronx Mun. Hosp., 64 N.Y.2d 59, 62, 473 N.E.2d 761, 762 (N.Y. 1984) ("Plaintiff must not only

plead in his complaint that he has served a notice of claim, but must also allege that the notice

was served at least 30 days prior to commencement of the action and that in that time defendants

neglected to or refused to adjust or to satisfy the claim.").  Thus, to the extent Perkins asserts

state law claims, they are dismissed for failure to comply with New York's notice-of-claim

requirement.

VIII.     Failure to Prosecute

Finally, Defendants point out that Perkins has failed to prosecute his claims

diligently.  (ECF No. 80.)  A plaintiff has a "duty to process his case diligently."  Lyell Theatre

Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982).  "A plaintiff's lack of diligence alone is

enough for dismissal."  West v. City of New York, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (citing

Messenger v. United States, 231 F.2d 328 (2d Cir. 1956)).  Here, Perkins failed to amend his

complaint or oppose Defendants' motion to dismiss, despite extensions and a warning that "if

[this Court] were to grant all of the motion then the case would be over."  (ECF No. 70 at 23.)

Given Perkins's failure to respond to this Court or to Defendants, it appears he has lost interest in

pursuing this action.  Accordingly, Perkins is directed to show cause before this Court on March 30, 2017 at 11:00 a.m., in Courtroom 20-B at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, why this action should not be dismissed for failure to prosecute.  Failure to appear at that time will result in dismissal of this action.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in all respects.  The Clerk of Court is directed to terminate the motion pending at ECF No. 76 and mail a copy of this Opinion and Order to Perkins at his last known address.

Dated: March 15, 2017
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.